UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ENTU AUTO SERVICES, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 15-77** |
| **PICMYRIDE.BIZ, LLC D/B/A QUICKPICAUTO, TIMMY HENDRIX, AND AUBREY KING** | **SECTION: "S" ()** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Timmy Hendrix's Motion to Dismiss for Improper Venue (Doc. #6) is **GRANTED**, and this matter is **TRANSFERRED** to the United States District Court for the Western District of Louisiana.

## BACKGROUND

This matter is before the court on a motion to dismiss for improper venue filed by defendant, Timmy Hendrix.[1] Hendrix argues that venue does not lie in the United States District Court for the Eastern District of Louisiana because none of the defendants reside in this district and none of the actions or omissions giving rise to plaintiff's cause of action occurred in the district. Hendrix contends that the proper venue is the United States District Court for the Western District of Louisiana.

Plaintiff, ENTU Auto Services, Inc., and defendants, PicMyRide.Biz, LLC d/b/a Quickpicauto, Timmy Hendrix, and Aubrey King, are competing businesses that provide online inventory management tools to automobile dealerships. ENTU has been in business since 2000, and

---

[1] Hendrix's motion is titled "Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, Lack of Service of Process and Failure to State Claim for which Relief Can Be Granted Pursuant to C.C.P. 12(B)(1)(2)(3)(4) & (6)." The memorandum in support of the motion focuses on the venue issue, and this court finds that a transfer of venue to the United States District Court for the Western District of Louisiana is appropriate. Thus, the court will not address the other portions of the motion.

operates in Louisiana, Texas and Mississippi. Its inventory management tools "include software solutions for inventory management, photography, automobile descriptions derived from VIN codes, market analysis tools, custom window stickers, incentive and rebate tools, and custom buyer guides."

From 2009 to 2013, ENTU worked with Hendrix, who was in the business of providing print, radio and television marketing to automobile dealerships. Hendrix would approach dealerships and offer his services along with ENTU's. In 2013, ENTU stopped working with Hendrix due to customer complaints about Hendrix. In 2014, Hendrix, along with King, formed PicMyRide.Biz, LLC, which directly competes with ENTU in providing online inventory management services to automobile dealerships.

On January 13, 2015, filed this action, along with an application for a temporary restraining order, alleging that defendants engaged in false advertising under the Lanham Act, 15 U.S.C. § 1125(a), by circulating an advertisement that contains false, misleading and deceptive statements about ENTU's pricing and performance and the capabilities of its services. ENTU alleges that in December 2014, defendants prepared an advertisement that contained false information about ENTU's services and distributed it to automobile dealerships in Louisiana. ENTU claims that "Defendants used ENTU's confidential information obtained by Hendrix to directly target ENTU's customers with the False Ad." ENTU alleges that the advertisement "purports to compare the advantages of ENTU's online inventory management services with the services of Defendant[s]," and that it includes:

1. literally false information about ENTU's pricing because it states that the subscription fee for ENTU's services is $375, when it is actually $149;

2. a literally false statement that ENTU's services do not provide the client with tools that are "usable to manage your inventory," when ENTU does provide such tools;

3. a misleading and deceptive statement that ENTU's services involve "manual upload" of inventory information, while defendants' services provide "same day upload," when in reality, there is no difference between the upload services offered; and,

4. a misleading and deceptive statement that ENTU's service "uses a 3rd party vendor . . . causing inaccuracies on almost a daily basis," and in comparison, defendants' provide "100% accuracy with" a customer's inventory, when in reality, ENTU's system is exactly as accurate as defendants' system.

ENTU alleges that defendants' false advertisement violates the Lanham Act, 15 U.S.C. § 1125(a); violates the Louisiana Unfair Trade Practices Act ("LUTPA"), Louisiana Revised Statutes § 51:1405; constitutes fraud under Louisiana Civil Code article 1953; violates Louisiana's False Advertising law, La. Rev. Stat. § 51:411; and, violates Louisiana's Anti-Dilution Statute, La. Rev. Stat. § 51:223.1.  In its complaint, ENTU seeks a preliminary and permanent injunction preventing defendants from distributing the false advertisement, or any other false advertisement, and requiring defendants to issue corrective advertising.  ENTU also seeks an award of lost profits and actual damages attributable to the false advertising, treble damages, interest, costs, expenses and attorneys' fees.

ENTU filed an application for a temporary restraining order, arguing that it is warranted due to defendants' violation of the Lanham Act, 15 U.S.C. § 1125(a).  ENTU seeks an injunction preventing defendants from:

1. distributing, transmitting, publishing or circulating any statement that incorrectly states or suggests pricing of ENTU's services;

2. distributing, transmitting, publishing or circulating any statement that compares ENTU's prices to Defendants' prices;

    3. distributing, transmitting, publishing or circulating any statement that states or suggests that ENTU's services do not allow clients to manage client's inventory;

    4. distributing, transmitting, publishing or circulating any statement that characterizes ENTU's services as incapable of allowing clients to manage client's inventory;

    5. distributing, transmitting, publishing or circulating any statement that states or suggests that ENTU's services rely on "manual" uploading of data;

    6. distributing, transmitting, publishing or circulating any statement that characterizes the uploading feature of ENTU's services as functionally different from Defendants' services;

    7. distributing, transmitting, publishing or circulating any statement that states or suggests that ENTU's services result in inaccuracies in client's inventory as a result of ENTU's use of a third-party DMS provider; and

    8. distributing, transmitting, publishing or circulating any statement that states or suggests that ENTU's DMS provider is not certified.

On January 29, 2015, the parties entered into a consent order that resolved the temporary restraining order and preliminary injunction issues. Under the consent order, Hendrix agreed to be enjoined from the eight actions listed.

    Prior to entering in the consent order, Hendrix filed a motion to dismiss arguing that this court is an improper venue for this action. He states in his affidavit that he is a resident of the Western District of Louisiana, and that the document that ENTU refers to as the false advertisement was not an advertisement, but was a one-page comparison sheet that he gave to only two automotive dealerships in Iberville Parish, Louisiana, which is in the Western District of Louisiana. He claims that he did not distribute it in the Eastern District of Louisiana, and has "no intention of publishing or otherwise using the offending documents in any other business activity." Hendrix also notes that PicMyRide.Biz, LLC d/b/a Quickpicauto was dissolved on December 30, 2014, and that he is no

longer associated with King.  ENTU argues that venue is proper in the Eastern District of Louisiana because it resides in this district and will feel the effects of Hendrix's actions in this district.

## ANALYSIS

**A.    Venue**

Under Rule 12(b)(3) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action du to "improper venue."  The court's authority to dismiss an action due to improper venue is governed by 28 U.S.C. § 1406.  Section 1406(a) states that, if an action is filed in the wrong district, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

The court accepts all undisputed facts contained in the plaintiff's pleadings as true, and factual conflicts are resolved in the plaintiff's favor. See Ginter ex.re. Ballard v. Belcher, Pendergast & Laporte, 536 F.3d 439, 448-49 (5th Cir. 2008).  The court may consider evidence outside of the complaint and the attachments thereto in determining whether venue is proper. Ambraco Inc. v. Bossclip B. V., 570 F.3d 233, 238 (5th Cir. 2009).  There is a split of authority regarding which party  the burden of establishing whether venue is proper. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352 (3d ed. 2014).  As explained by Wright and Miller:

> A number of federal courts have concluded that the burden of doing so is on the defendant, since venue is a "personal privilege" that can be waived and a lack of venue should be established by the party asserting it.  On the other hand, an equal (perhaps larger) number of federal courts have imposed the burden on the plaintiff in keeping with the rule applied in the context of subject mater and personal jurisdiction defenses.  The latter view seems correct inasmuch as it is the plaintiff's obligation to institute his action in a permissible forum, both in terms of jurisdiction and venue.  There seems to be little justification for distinguishing between the two types of defenses in determining the placement of the burden.

Because the plaintiff must institute his action in a permissible forum in terms of jurisdiction and venue, the plaintiff must demonstrate that venue is proper.

Section 1391(b), Title 28 of the Untied States Code provides that a civil action may be brought in:

> **(1)** a judicial district in which any defendant resides, if all defendants are resident of the State in which the district is located;
>
> **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> **(3)** if there is no district in which an action may otherwise be brought as provided in this action, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

In this case, the parties' arguments concern the application of the transactional venue provision in § 1391(b)(2). Hendrix argues that the only "events or omissions" that give rise to ENTU's claims are his distribution of the allegedly false advertisement to two automobile dealerships in Iberville Parish, Louisiana, which is in the Western District of Louisiana. ENTU contends that "a substantial part of the events or omissions" that give rise to its claim occurred in the Eastern District of Louisiana where it resides, because that is where it will feel the economic effects of Hendrix's alleged actions.

As noted by Wright and Miller, "[i]n determining whether a substantial part of the events underlying a claim arose in a district, some courts consider only the activities of the defendants. Other courts, however, decline to limit their assessment to acts or omissions of the defendants, and will consider plaintiff's activities in the district as well." 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3806 (4th ed. 2014) The United States Court of Appeals

6

for the Fifth Circuit has not ruled upon this issue. Wright and Miller also notes that "[i]n tort cases, courts tend to focus on where the allegedly tortious actions took place and where the harms were felt."[2] Id. But, "[t]here is a tendency to conclude that suffering economic harm within a district is not by itself sufficient to warrant transactional venue there." Id. This "is probably the correct view, because otherwise venue almost always would be proper at the place of the plaintiff's residence, an option that Congress abolished in the general venue statute [in] 1990," by eliminating the language that stated that the district "in which the claim arose" was the proper venue. Id. Indeed, many district courts in the Fifth Circuit have held that the focus of the transactional venue inquiry is on the actions or omissions of the defendant, and not where the plaintiff later feels the economic effects of those actions. See Gray Cas. and Sur. Co. v. Lebas, 2013 WL 74351, at *2 (E.D. La. 1/7/2013) (Engelhardt, J.) (listing cases).

In this case, Hendrix's affidavit establishes that his actions that gave rise to ENTU's claim occurred in the Western District of Louisiana. ENTU's sole argument to establish venue in the Eastern District of Louisiana is that it will feel the economic effects of Hendrix's actions in the district, which, as noted by Wright and Miller, is insufficient to warrant transactional venue. Therefore, transferring this case to the Western District of Louisiana is appropriate.

## CONCLUSION

**IT IS HEREBY ORDERED** that Timmy Hendrix's Motion to Dismiss for Improper Venue (Doc. #6) is **GRANTED**, and this matter is **TRANSFERRED** to the United States District Court for the Western District of Louisiana.

---

[2] Lanaham Act claims are based on common law tort claims. See Chevron Chem. Co. v. Voluntary Purchasing Grp., Inc., 659 F.2d 695, 700–01 (5th Cir. 1981).

New Orleans, Louisiana, this __9th__ day of April, 2015.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**